JESSICA I. ROTHSCHILD, SBN 278712
STEPTOE LLP
1330 Connecticut Ave., NW
Washington, DC 20036

One Market Plaza
Steuart Tower, 10th floor
Suite 1070
San Francisco, CA 94105
415 365 6700

CHRISTOPHER S. NIEWOEHNER (admitted *pro hac vice*)
STEPTOE LLP
227 W. Monroe, Suite 4700
Chicago, IL 60606
312 577 1240

Attorneys for Plaintiff,
META PLATFORMS, INC.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| META PLATFORMS, INC., a Delaware Corporation,<br><br>*Plaintiff*,<br><br>v.<br><br>JUDANG TEAM LLC, a Florida Limited Liability Company,<br><br>PERFEOS LLC d/b/a SHOP AT MARS, a Florida Limited Liability Company,<br><br>JOT & JOURNEYS aka JOT & JOURNEY, an unincorporated Florida business, and<br><br>ANTONIO JOSÉ LIÉVANO, in his individual capacity and d/b/a "Judang Team," "Jot & Journeys," and "Shop at Mars,"<br><br>*Defendants*. | Case No. 3:25-cv-05156-TSH<br><br>**RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT** |

1
PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT

**INTRODUCTION**

The Defendants seek to take advantage of their dishonesty and failure to differentiate between the individual running the operation and three entities he created as a basis to dismiss the Complaint. Defendant Liévano created pseudonymous accounts to operate a deceptive and misleading advertising scheme on Facebook and Instagram, whereby the Defendants accepted payment for purportedly high-quality products but sent customers lesser quality and counterfeit products or no product at all and they also charged unauthorized recurring subscription fees. As part of the scheme, Defendant Liévano orchestrated submissions of false financial information by Judang Team LLC, Jot & Journeys ("J&J"), and Perfeos LLC (collectively, the "Entity Defendants"), which evidences the intermingled financials of the three purportedly distinct entities. The Defendants obtained over $8.1 million in credits to purchase advertisements that the Defendants placed but never paid for.

By their individual conduct, each of the Defendants breached its contracts with Meta in numerous ways: using Meta's services to sell fraudulent services (bait-and-switch schemes, misleading ads, inferior or nonexistent products, unauthorized recurring subscription fees, concealing the true nature of the business) and collectively taking out over $8.1 million in ads using credit that the Defendants have not paid for. Moreover, after Meta caught onto the scheme and terminated their accounts, they created new accounts to bypass Meta's and Instagram's Terms and Policies.

In addition, the Defendants committed fraud by submitting false statements and withholding material, accurate information from Meta to obtain credit to place ads on Facebook and Instagram.

The Defendants' arguments amount to complaints about the fact that all four Defendants have engaged in the same conduct. But this is not a basis to dismiss the Complaint.[1]

---

[1] If the Court were to find any merit to any of the Defendants' arguments, Meta respectfully seeks leave to amend the Complaint.

2

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT

**APPLICABLE LEGAL STANDARD**

To survive a motion to dismiss, a complaint must allege sufficient facts to state a claim for relief that is plausible on its face. The Complaint here easily meets this standard.

Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief" such that each defendant is put on notice of the claims they must defend against. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This pleading standard does not require "detailed factual allegations" but requires sufficient facts that, when accepted as true, "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) (quoting *Twombly*, 550 U.S. at 555, 570). On a motion to dismiss, the court accepts plaintiff's factual allegations as pled and construes all factual inferences in the light most favorable to the plaintiff. *Id.*

Rule 9 lays out a heightened pleading standard for fraud-based claims, which requires plaintiffs to allege "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Doe v. Roblox Corp.*, 602 F. Supp. 3d 1243, 1254 (N.D. Cal. 2022). Allegations of fraud "must be accompanied by the who, what, when, where, and how of the misconduct charged." *Id.* (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

In addition, "a plaintiff may plead claims against multiple defendants by referring to them collectively . . . . These collective allegations are construed as applying to each defendant individually." *Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1227 (S.D. Fla. 2014) (citation omitted); *see also Tivoli LLC v. Sankey SPA*, No. SA CV 14-1285-DOC (JCGx), 2015 WL 12683801, at *3-5 (C.D. Cal. Feb. 3, 2015) ("Group pleading is not fatal to a complaint if the complaint still gives defendants fair notice of the claims against them.").

**ARGUMENT**

 **1. Liévano Is Individually Bound to the Contracts and Is Liable for Breaching Them**

  **a. Liévano Breached Meta's Terms in His Personal Capacity**

The Defendants argue that, because Liévano engaged in "corporate acts" and there is no privity between Liévano and the corporate entities he runs and operates, the Complaint "fails to plausibly allege that Liévano personally entered into or was bound by any of the cited agreements

3
PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT

(e.g., Meta's Terms of Service, Instagram's Terms, Meta's Commercial Terms, Self-Serve Ad Terms, or Online Invoicing Terms)." Mot. to Dismiss at 4. This argument is incorrect. The Complaint squarely alleges that Liévano, individually, was bound by each of the contracts at issue.

The first paragraph of the complaint defines Liévano in two ways: individually as "Liévano" and collectively within the defined term "Defendants." Compl. ¶ 1. Consequently, each time the Complaint mentions either Liévano or Defendants, the allegations pertain to Defendant Liévano. The Complaint levies numerous specific allegations against Liévano that are sufficient to withstand a motion to dismiss:

- Liévano personally created and operated multiple Facebook and Instagram accounts and thereby had notice of and agreed to Meta's and Instagram's Terms and Policies. Compl. ¶¶ 46-48 (detailing the usernames and creation dates of multiple Facebook and Instagram accounts that Liévano created and managed personally, both before and after Meta sent him a cease-and-desist letter).
- Liévano, as one of the Defendants, personally "created, controlled, and used multiple Facebook and Instagram accounts, advertising accounts, and Facebook Pages, and thereby received notice of, agreed to, and [was] bound by Meta's and Instagram's Terms and Policies." Compl. ¶ 76; *see also id.* ¶¶ 3, 78-82 (defining Meta's and Instagram's Terms and Policies, which are the set of contracts at issue in the breach of contract claim).
- Liévano personally received Meta's February 2025 cease-and-desist letter that outlined the ways in which the Defendants, including Liévano, were violating those Terms. Compl. ¶¶ 72-73 & Ex. 4.
- Liévano personally created multiple accounts after Meta disabled his accounts for violating Meta's or Instagram's Terms and Policies. Compl. ¶ 49; *see also id.* ¶ 82.
- Liévano, as one of the Defendants, personally breached Meta's and Instagram's Terms and Policies. Compl. ¶¶ 78-82.

The foregoing allegations clearly describe Liévano's personal agreement to Meta's and Instagram's Terms and Policies and are more than sufficient to survive a motion to dismiss. *See Williams v. Apple, Inc.*, 449 F. Supp. 3d 892 (N.D. Cal. 2020) (denying a motion to dismiss upon

finding that plaintiffs had sufficiently alleged the existence of a contract even where they failed to allege the specific version of the contract and when they signed the contract). As an additional basis for Liévano's personal liability, the Complaint alleges that he is the principal and sole member of unincorporated J&J and, thus, is personally liable for J&J's breaches, as described below.

### b. Liévano Is Also Liable for Breaching Each Contract Identified in the Complaint Because He Did Business as the Other Three Entity Defendants

In addition to allegations against Liévano purely in his individual capacity, the Complaint raises allegations against him in his capacity doing business as the other three Entity Defendants: Judang Team LLC, Perfeos LLC, and J&J. Specifically, the Complaint alleges that "Antonio Jose Liévano ('Liévano'), individually **and acting through** Judang Team, Perfeos, and his unincorporated business Jot & Journeys ('J&J'), (collectively, 'Defendants') operated a deceptive and misleading advertising scheme on Facebook and Instagram." Compl. ¶ 1 (emphasis added). The Complaint describes multiple Facebook pages and Meta business and advertising accounts created by and through Liévano for Judang Team, Perfeos, and J&J. Compl. ¶¶ 50-53. The Complaint also directly links Liévano to the shell entities he created to orchestrate his scheme: Liévano is the founder and sole member of Judang Team and Perfeos, and he operates J&J as an unincorporated entity. Compl. ¶¶ 7-8. The facts alleged are sufficient facts to survive a motion to dismiss and take discovery to prove that Liévano should be held liable for the actions of his business entities.

The Defendants assert that no alter ego theory was pleaded to pierce the corporate veil (*e.g.*, no facts alleging commingling of assets or undercapitalization to treat Liévano as the entities' alter ego). Mot. to Dismiss 5. To the contrary, Meta has alleged sufficient facts to infer, and expects to prove through discovery, that Liévano should be held liable for the actions of his corporate entities under an alter ego theory. "[W]hen the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation, in most instances the equitable owners." *Sonora*

*Diamond Corp. v. Superior Ct.*, 99 Cal. Rptr. 2d 824, 836 (Cal. Ct. App. 2000). "An individual can be deemed an alter ego of a corporation if: (1) there is a unity of interest and ownership such that the separate personalities of the corporation and the individual no longer exist, and (2) an inequitable result will follow if the acts are treated as those of the corporation alone." *Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*, 108 F. Supp. 3d 816, 826 (N.D. Cal. 2015). Both are true here.

In *Ultratech*, the court found that "[a]n officer may be liable for breach-of-contract if [the officer] was the alter ego of the breaching party." *Id.* The court noted that the specific considerations necessary to prove an alter ego theory (*e.g.*, commingling of funds, disregard of corporate formalities, and undercapitalization) "are better evaluated with the benefit of discovery." *Id.* But at the pleading stage, the court found that plaintiff's allegations in the complaint—"that Wang was the president, principal, and sole owner of [the contracting company], that he controlled all aspects of [the contracting company's] business, and day-to-day operations, and that he negotiated and signed the . . . agreement"—were sufficient to infer that there was a unity of interest between Wang and the contracting company. *Id.* The court also found that "given the strong allegations that Wang used his position as controlling shareholder . . . to position himself to misappropriate materials received by him pursuant to [the] agreement, it would be plainly inequitable for Wang to escape liability." *Id.*

Similarly, there is a unity of interest between and among Liévano and the Entity Defendants. It would plainly be inequitable to permit Defendant Liévano to escape liability for the actions he orchestrated by shielding him with the entities that he created and controlled. Like the defendant in *Ultratech*, Liévano is alleged to be the sole owner of the Entity Defendants and is alleged to control all aspects of those entities. Compl. ¶ 8. Moreover, the overlapping balance sheets that each entity submitted to Meta, Compl. ¶ 56 & Exs. 1-3, support a plausible claim that the Entity Defendants' assets were either completely intermingled or that these entities were shells created by Liévano to conduct business with Meta. These allegations are sufficient to survive a motion to dismiss.

Furthermore, establishing Liévano's personal liability for Defendant J&J does not even require an alter ego theory. As alleged in the Complaint, J&J is not an incorporated entity and does not appear to be registered as an LLC; it therefore does not enjoy any limited liability benefits. Liévano, as sole operator of this unregistered entity is thus personally liable for J&J's conduct. 18 Am. Jur. 2d Corporations § 5 ("a sole proprietorship has no legal existence apart from its owner."); *see Types of Business Entities/Structures*, Division of Corporations, Florida Department of State, https://dos.fl.gov/sunbiz/start-business/corporate-structure/ (last visited Nov. 20, 2025) (explaining the types of business entity structures available in the state of Florida and which enjoy limited liability and that a sole proprietorship does not); *Burks v. Weast*, 228 P. 541, 543 (Cal. Ct. App. 1924) ("[W]here parties are associated and conduct business as an unincorporated association, they are regarded as partners, so far as affects the question of liability" and "each member of such an association [is] individually liable for the entire debt.").

### 2. The Complaint Alleges Sufficient Facts to State a Breach of Contract Claim

The Defendants argue that the Complaint is impermissibly vague because it "lump[s] together factual allegations and claims against several defendants." Mot. to Dismiss at 6-7. But this argument is a smokescreen intended by the Defendants to obscure the fact that they, in their submissions to Meta, conflated themselves by submitting the same financial data for all three entities. Compl. ¶ 56 & Exs. 1-3.

Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. A complaint is sufficient where it puts each defendant on notice of the claims against which they need to defend. A complaint is not insufficient merely because it refers to defendants in the plural where more than one defendant is alleged to have taken the actions described in the Complaint. *See, e.g.*, *Sprint Sols., Inc.*, 44 F. Supp. 3d at 1227) ("[A] plaintiff may plead claims against multiple defendants by referring to them collectively . . . . These collective allegations are construed as applying to each defendant individually." (citation omitted)). Moreover, courts routinely permit collective allegations where a group of defendants is alleged to have engaged in the same or similar conduct described in a complaint so long as each defendant is sufficiently put on notice of the claims against it. *See Tivoli*,

7
PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT

2015 WL 12683801, at *3-5 ("Group pleading is not fatal to a complaint if the complaint still gives defendants fair notice of the claims against them."); see also *Russo v. Fed. Med. Servs., Inc.*, 744 F. Supp. 3d 914, 922 (N.D. Cal. 2024) ("Collective allegations can be sufficient . . . if the claims involve actors engaged in the same or similar conduct." citing *EcoHub, LLC v. Recology*, 2023 WL 6725632, at *6 (N.D. Cal. Oct. 11, 2023))).

Here, the Complaint provides sufficient detail on which entity(ies) and/or person were involved in which conduct and thus put each Defendant on notice of the allegations each needs to defend against. Specifically, the Complaint identifies the individual defendants and defines "Defendants" plural as collectively referring to all four Defendants. Compl. ¶ 1. The Complaint then uses the defined term "Defendants" where allegations relate to all four. Specifically, the Complaint alleges that each Defendant agreed to Meta's and Instagram's Terms and Policies by creating and using various Facebook and Instagram accounts. Compl. ¶¶ 47-48, 50-53 (with respect to Defendant Liévano), ¶¶ 50-53 (with respect to Judang Team, Perfeos, and J&J). The Complaint parses the individual defendants to establish the contracts to which each is each party. For example:

- Paragraphs 47 and 48 specify the dates on which Defendant Liévano created various Facebook and Instagram user accounts and agreed to Meta's Terms and Instagram's Terms;
- Paragraph 52 specifies dates on which each Defendant created Facebook business accounts and agreed to Meta's Commercial Terms, Meta's Self-Serve Ad Terms, Meta's Online Invoicing Terms, and Meta's Ad Standards; and
- Paragraph 53 specifies the dates on which each Defendant created and administered Facebook Pages.

The Complaint further alleges that <u>each</u> Defendant violated Meta's and Instagram's Terms and Policies by

- Placing deceptive and misleading ads on Facebook, Compl. ¶¶ 60-65, 68 (by all Defendants), including through a bait-and-switch scheme, Compl. ¶ 54 (by all Defendants), and by charging unauthorized recurring subscription fees, Compl. ¶¶ 66-67 (by all Defendants);

- Submitting false and misleading documents to induce Meta to extend ad credit lines, Compl. ¶¶ 55-57 (by all Defendants, including detailed actions of the Entity Defendants by Defendant Liévano);

- Failing to pay ad invoices, Compl. ¶ 59 (by all Defendants); and

- Creating new accounts after being banned, Compl. ¶ 49 (with respect to Defendant Liévano), ¶¶ 72, 74 (by all Defendants).

The allegations listed above, along with the remainder of the allegations spelled out in the Complaint, are more than sufficient to state a claim upon which Meta can seek relief.

The Complaint in this case does not suffer from the same deficiencies as the complaint described in the in the unpublished *In re iPhone* case cited by the Defendants. There, the court granted a motion to dismiss "on the ground that Plaintiffs have failed to allege sufficient facts establishing Article III standing" and not on the ground that Plaintiffs had failed to state a claim under Rule 8. *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *1 (N.D. Cal. Sept. 20, 2011). While the court also identified deficiencies in the complaint, including conclusory allegations as to multiple defendants that made it difficult for individual defendants to respond to the allegations against them, it allowed the plaintiffs to amend the complaint. *Id.* at *8, *15. Nevertheless, no such similar deficiencies exist here. In contrast, the Complaint is clear that "Defendants" refers collectively to all four Defendants. Compl. ¶ 1 ("Defendants" is a defined term). As such, each time "Defendants" (plural) are alleged to have agreed to Meta's and Instagram's Terms and Policies or carried out a specific action, that allegation pertains to all four Defendants. Compl. ¶ 1; *see also Sprint Sols., Inc.*, 44 F. Supp. 3d at 1227 (explaining that there is nothing improper about pleading collective allegations that are construed as applying to each defendant individually).

In sum, the Complaint does more than enough to put each Defendant on notice that it is alleged to have violated Meta's and Instagram's Terms and Policies and of the specific conduct amounting to a breach. The Complaint contains the requisite level of detail to survive a motion to dismiss.

### 3. Meta's Fraud Claim Is Not Barred by California's Economic Loss Rule

The Defendants erroneously argue that claims that their commission of fraud on Meta are barred because their actions occurred in the context of the contracts at issue here. Mot. to Dismiss at 7-8. Not so. In *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268 (2004), the California Supreme Court held that the economic loss rule does not bar a plaintiff's fraud and intentional misrepresentation claims when they are part of the inducement into the contract and are thus independent of the defendant's breach of contract. That is the context in which the Defendants' fraudulent conduct occurred.

The *Robinson* court explained that "[t]he economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Id.* at 272. In allowing the plaintiff to recover on both the breach of contract claim and the fraudulent intentional misrepresentation claim, the court emphasized that tort damages are permitted in contract cases where one party commits fraud during the course of entering into the contract. *Id.* at 273-275. The court explained that "California's public policy also strongly favors this holding," noting that there is an "extra measure of blameworthiness inhering in fraud" and "a contract is not a license allowing one party to cheat or defraud another." *Id.* at 275 (first quoting *Lazar v. Superior Ct.*, 909 P.2d 981, 990 (Cal. 1996); then quoting *Grynberg v. Citation Oil & Gas Corp.*, 573 N.W.2d 493, 501 (S.D. 1997)).

The Defendants here, like the defendant in *Robinson*, argue that the "fraud and misrepresentation claims are not independent of the contract but are simply part of the alleged breach of contract." *Robinson* at 275; Mot. to Dismiss at 8. But as the *Robinson* court explained, such an interpretation of the economic loss rule would "encourage[e] fraudulent conduct at the expense of an innocent party." *Id.* at 276.

The circumstances and reasoning of *UMG Recordings, Inc.*, the case cited by the Defendants, is inapposite.[2] In *UMG Recordings*, the court noted that "[t]he rationale for the

---

[2] In *UMG Recordings*, various record companies and music publishers sued for distributing copyrighted music to various airlines for inflight entertainment with no proper licensing or authorization. 117 F. Supp. 3d at 1100-01. Defendants counterclaimed, arguing that plaintiffs orally agreed sometime between 2009 and 2011 to a negotiated

[economic loss] rule is particularly strong where a party alleges a claim based on 'commercial activities that negligently or inadvertently [went] awry.'" *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1104 (C.D. Cal. 2015) (quoting *Robinson*, 34 Cal.4th at 911 n.7). The court reasoned that "[b]usinesses should not have to worry that simple disputes about bills and contract performance will routinely lead to the threat of punitive damages." *Id.* at 1105 (quoting *Oracle USA, Inc. v. XL Global Services, Inc.*, No. C. 09–00537 MHP, 2009 WL 2084154, at *7 (N.D. Cal. July 13, 2009)). The fraud allegations in this case are not based on "negligent" or "inadvertent" actions"; instead, they are based on the Defendants' <u>knowing and intentional</u> submission of false and materially misleading statements which purported to demonstrate financial wherewithal to repay a loan and thereby induced Meta to extend advertising credit lines. In other words, the Defendants' fraudulent conduct, which induced Meta to extend more than $8.1 million in advertising credit lines, was not a negligent or unintentional action of the nature reasonably foreseeable in the contract. Like in *Robinson*, the Defendants' affirmative misrepresentations, upon which the Meta justifiably relied, constitute a tort independent of the breach of contract claim.

Meta is not seeking to merely hold the Defendants liable for breaching contracts. Meta is also seeking to hold the Defendants culpable for intentionally and knowingly defrauding Meta. This conduct renders the economic loss rule unavailable here.

**4.   The Complaint Pleads Fraud with the Particularity Required by Rule 9(b)**

The Defendants raise yet another frivolous argument, asserting that the fraud claim is deficient because it "lumps all the Defendants together" and does not delineate every single fraudulent submission made by each Defendant, which purportedly makes it impossible for the Defendants to "decipher what alleged misrepresentations are attributable to who." Mot. to Dismiss at 9. Liévano orchestrated a fraudulent scheme using the three entities he created, Compl. ¶¶ 1, 8, 9—including by submitting virtually identical false financial information to obtain multiple loans

---

licensing agreement under which defendants could continue to reproduce and distribute plaintiffs' music but that plaintiffs had no intention of honoring this oral promise. *Id.* at 1101-02. In assessing whether the economic loss rule applied in that case, the court found that counterclaimants had effectively sought to recast their straightforward claim for breach of an alleged oral contract as a tort by pursuing promissory fraud, fraudulent concealment, and negligent misrepresentation claims. *Id.* at 1103-05. The court dismissed all of defendants' counterclaims on plaintiffs' 12(b)(6) motion.

on behalf of those entities, Compl. ¶¶ 55-57 & Exs. 1-3. The Complaint clearly alleges the Defendants' common actions, which is a permissible manner of pleading and does not render the Complaint deficient. *See Am. Gen. Life Ins. Co. v. Khachatourians*, No. CV 08-06408 DDP (RZx), 2009 WL 10673327, at *3 (C.D. Cal. Oct. 20, 2009) (denying a motion to dismiss and explaining that "there is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify false statements made by each and every defendant" (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)).

Courts routinely reject the argument that the plaintiff had failed to state a fraud claim where, as here, the "allegations [were] specific enough to give [the defendant] notice of how [the plaintiff] believes it defrauded her." *Doe v. Roblox Corp.*, 602 F. Supp. 3d 1243, 1263 (N.D. Cal. 2022) ("The 'who' is Roblox. The 'what' is inducing users to reasonably believing that their purchased virtual items would not be deleted according to the alleged 'scheme.' The 'when' is when Doe used the service. The 'where' is on Roblox's website. And the 'how' is the course of conduct described above."). Here, the Complaint describes circumstances constituting fraud with particularity as required by 9(g). It identifies the "who, what, when, where, and how" of the fraud. The "who" is each of the four named Defendants: Liévano, Judang Team, Perfeos, and J&J, Compl. ¶¶ 1, 8-9, 85-90. The "what" is inducing Meta to give advertising credits, Compl. ¶ 89. The "when" is on the dates specified in the complaint. Compl. ¶ 56 (for J&J on or about April 1, 2024; for Perfeos on or about April 23, 2024; and for Judang Team on or about May 27, 20214). The "where" is through Meta's online credit application process, Compl. ¶¶ 86-88. And the "how" is submitting information that misrepresented the Defendants' financials and withholding accurate financial information, Compl. ¶¶ 56, 86-88 & Exs. 1-3.

As discussed above, the Complaint is not deficient merely because it refers to "Defendants" plural when alleging conduct attributed to each Defendant individually. The *Cisneros* case cited by Defendants does not provide otherwise. In *Cisneros*, the plaintiff "ma[de] no effort to allege specific misrepresentations or names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Cisneros v. Instant Cap. Funding Grp., Inc.*, 263 F.R.D. 595, 607 (E.D.

Cal. 2009). None of those deficiencies exist in Meta's Complaint. As described above, the Complaint makes clear that each Defendant has engaged in the same misconduct.

In moving to dismiss, the Defendants are essentially asking the Court to let them take advantage of their dishonesty and failure to differentiate between Liévano and the three entities he created to carry out their fraudulent scheme. These arguments are without merit and should be rejected.

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendants' Motion to Dismiss. Alternatively, if the Court decides to grant the Defendants' motion, in whole or in part, the Court should permit Plaintiffs to amend the Complaint.[3]

Dated: November 20, 2025

Respectfully submitted,

/s/ Jessica I. Rothschild
Jessica I. Rothschild
Email: jrothschild@steptoe.com
STEPTOE LLP
1330 Connecticut Ave., NW
Washington, DC 20036
202 429 1370

One Market Plaza
Steuart Tower,
10th floor
Suite 1070
San Francisco, CA 94105
415 365 6700

Christopher S. Niewoehner
(admitted *pro hac vice*)
Email: cniewoehner@steptoe.com
STEPTOE LLP
227 W. Monroe Street
Suite 4700

---

[3] Rule 15 provides that dismissal with leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has held that "this policy is to be applied with extreme liberality." *See, e.g.*, *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). Dismissal without leave to amend is appropriate only when the complaint could not possibly be cured by amendment. *See, e.g.*, *Tivoli*, 2015 WL 12683801 at *2. Therefore, should the Court find any merit to the Defendants' arguments, Meta respectfully seeks leave to amend the Complaint.

Chicago, IL 60606
312 577 1240

Attorneys for Plaintiff META PLATFORMS, INC.

## CERTIFICATE OF SERVICE

I, JESSICA I. ROTHSCHILD, hereby certify that on November 20, 2025, I caused to be electronically filed PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT to be electronically filed with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Dated: November 20, 2025               Respectfully submitted,

                                       /s/ Jessica I. Rothschild
                                       Jessica I. Rothschild
                                       Attorneys for Plaintiff META PLATFORMS, INC.